J. S03006/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
v. :
:
KEVIN HYMAN, : No. 3066 EDA 2013
:
Appellant :

Appeal from the Judgment of Sentence, July 30, 2013,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0004610-2008

BEFORE: FORD ELLIOTT, P.J.E., PANELLA AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.: **FILED JUNE 10, 2015**

Kevin Hyman appeals from the judgment of sentence imposed on July 30, 2013 after he was found to be in direct violation of his parole and probation. We affirm.

On October 7, 2008, appellant pled guilty to firearms not to be carried without a license, 18 Pa.C.S.A. § 6106, and possession of a firearm, 18 Pa.C.S.A. § 6105. On that same date, he was sentenced to serve a period of incarceration of 11½ to 23 months' and 4 years of probation. Appellant was granted parole on September 25, 2009, but failed to report to his parole officer; an "absconder warrant" was issued in December of 2009. On June 3, 2010, appellant was arrested on drug possession charges which were later withdrawn. On November 5, 2010, appellant appeared before the Honorable Susan I. Schulman for a violation of probation/parole hearing

resulting from his absconding and other technical violations. Appellant was found to be in technical violation for absconding from supervision; his parole was suspended and he was re-sentenced to 11½ to 23 months' incarceration and three years of probation. (Notes of testimony, 7/30/13 at 4.)

Appellant was granted parole on May 18, 2011. On July 6, 2011, appellant was arrested again and charged with murder, conspiracy, burglary, and related offenses for an incident that occurred on November 14, 2009, before his revocation hearing on November 5, 2010, but while he was serving parole under the original sentence imposed on October 7, 2008. During the next two years, appellant remained in jail throughout two jury trials that both ended in a hung jury and one trial which resulted in an acquittal on the murder charge. (*Id.* at 6, 8.) On July 18, 2013, appellant entered into a negotiated plea before the Honorable Benjamin Lerner to one count of burglary in exchange for a sentence of five years' probation.

On July 30, 2013, appellant again appeared before Judge Schulman for a probation violation hearing as the Commonwealth alleged he was in direct violation of his parole and/or probation based on the new burglary conviction. Defense counsel argued that there was no basis for a direct violation because the incident, occurring in 2009, predated the imposition of the current sentence imposed in 2010. (*Id.* at 17.) The court terminated appellant's parole, revoked probation, and resentenced appellant to 1½ to 5 years' incarceration.

Appellant filed a notice of appeal on August 29, 2013. Appellant complied with the trial court's order to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the trial court has filed an opinion.

On appeal, appellant argues that the trial court erred "by finding appellant in direct violation of his parole and probation as a result of criminal behavior that occurred prior to imposition of the sentence he was currently serving." (Appellant's brief at 9.) Appellant avers that at the time he pled guilty for the 2009 burglary, his original sentence had already been revoked for absconding. He claims that the burglary violated a sentence that had already been revoked and his new sentence could not have been violated by a burglary he committed before the new sentence was imposed. (*Id.* at 11.) He claims that a "probation revocation based on 'pre-probationary conduct' is invalid and must be reversed." (*Id.* at 13.) We disagree.

Again, after pleading guilty to multiple weapons offenses, appellant was released on parole in September of 2009; he absconded two months later. At the resulting VOP hearing, appellant pled for mercy and stated that he absconded as he was being "blamed for a murder [he] didn't commit." (Notes of testimony, 11/5/10 at 6-7.) Appellant stated he found out that he was wanted merely for questioning and he realized that he made a "big mistake" in absconding. (*Id.* at 6.) The VOP court revoked his parole

and resentenced him to 11½ to 23 months of imprisonment followed by three years of probation.

It is important to note that appellant actually committed a burglary on November 14, 2009 (the burglary to which he most recently pled guilty) nine days before he absconded and while he was on parole. The burglary was clearly committed while appellant was on parole, in violation of the terms of parole. Appellant had never suffered any consequence for this direct violation. We agree with the VOP court that appellant's criminal conduct that occurred before his VOP hearing on November 5, 2010 -- for which he was later convicted -- was "a proper basis to adjust [his] existing VOP sentence on July 30, 2013." (Trial court opinion, 4/9/14 at 7.)

We find the trial court has thoroughly and adequately addressed these issues, citing relevant authority, and we affirm on the basis of the trial court's opinion, which we adopt as our own.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2015

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF PENNSYLVANIA     :     CP-51-CR-0004610-2008

          VS.          :

                   :     3066 EDA 2013

KEVIN HYMAN            :

## OPINION

SCHULMAN, S.I., J.

Appellant appeals this Court's Order of July 30, 2013, which terminated Appellant's parole, revoked his probation, and re-sentenced him to one and a half (1 1/2) to five (5) years' incarceration. This Court submits the following Opinion in accordance with Pa. R.A.P. No. 1925, and for the reasons set forth herein, recommends that its Order be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On October 7, 2008, Appellant entered an open guilty plea to charges of violating Sections 6105 and 6106 of the Uniform Firearms Act (18 Pa. C.S.A. §§ 6105 and 6106).[1] On the charge of violating 18 Pa. C.S.A. § 6106, this Court sentenced Appellant to eleven and a half (11 1/2) to twenty-three (23) months' incarceration, followed by four (4) years' probation. This Court imposed no penalty on the charge of violating 18 Pa. C.S.A. § 6105. (See N.T. 10/7/08).

This Court granted Appellant parole on September 25, 2009, but he failed to report to his parole officer and an "absconder warrant" was issued in December of 2009. On or about June 3,

---

[1] These charges stem from Appellant's arrest on April 3, 2008. At approximately 11:50 p.m. that evening, Philadelphia Police officers pulled over a Lincoln Town Car that "swerve[d] and almost hit" the officers' vehicle. Defendant was a backseat passenger in the vehicle and was asked by the officers to exit the vehicle while they "were dealing with the driver[.]" As Appellant exited the vehicle, an officer observed "a brown handle of a shotgun sticking out of [Appellant's] pants." The officer immediately performed a pat down of Appellant and recovered the unloaded shotgun. While conducting a search incident to arrest, the officer also recovered ten (10) bags of marijuana from Appellant. (See N.T., 10/7/08, pp. 20-23).

**Exhibit "B"**

2010, Appellant was arrested on drug possession charges that later were withdrawn. On **November 5, 2010,** Appellant appeared before this Court for a violation of parole/probation ("VOP") hearing, resulting from his absconsion and other **technical** violations. This Court terminated Appellant's parole, revoked his probation, and re-sentenced him to eleven and a half (11 1/2) to twenty-three (23) months' incarceration followed by three (3) years' probation. (See N.T., 11/5/10, pp. 10-11).

Appellant was granted parole on May 18, 2011, but he again was arrested on July 6, 2011 on charges of burglary and murder. Appellant committed the burglary on or about **November 14, 2009** -- before his revocation hearing on November 5, 2010, but while he was serving parole under this Court's original sentence imposed on October 7, 2008. After two hung juries on the burglary charge, and one hung jury and eventual acquittal on the murder charge, Appellant pleaded guilty to burglary on July 18, 2013. (See N.T., 7/30/13).

On July 30, 2013, Appellant appeared before this Court for another VOP hearing, this one resulting from his **direct** parole/probation violation -- *i.e.,* the burglary conviction. This Court terminated Appellant's parole, revoked his probation, and re-sentenced him under 18 Pa. C.S.A. § 6106 to a term of one and a half (1 1/2) to five (5) years' incarceration. (See N.T., 7/30/13, p. 23).

## DISCUSSION

Appellant raises the following issues on appeal:

a. **"Whether the Court erred in finding appellant to be in direct violation of his parole and probation as a result of criminal behavior which occurred prior to imposition of that sentence of parole and probation."**

b. **"Whether appellant was denied due process of law when parole and probation violation proceedings were not initiated until over two years after**

2

**the alleged violation was known to the Commonwealth and where appellant suffered prejudice as a result of that delay."**

This Court will address Appellant's claims in the order that they are raised.

a.     **Whether this Court "erred in finding appellant to be in direct violation of his parole and probation as a result of criminal behavior which occurred prior to imposition of that sentence of parole and probation."**

"[T]he scope of review in an appeal following a sentence imposed after a probation revocation is limited to the validity of the revocation proceedings and the legality of the sentence imposed following revocation." See Commonwealth v. Infante, 585 Pa. 408, 419 (Pa. 2005) (citations omitted here). "The reason for revocation of probation need not necessarily be the commission of or conviction for subsequent criminal conduct." See Commonwealth v. Ortega, 955 A.2d 879, 886 (Pa. Super. 2010) (citations omitted here). Rather, "[a] probation violation is established whenever it is shown that the conduct of the probationer indicates the probation has proven to have been an ineffective vehicle to accomplish rehabilitation and not sufficient to deter against future antisocial conduct." Id.

Furthermore, "[u]nder Pennsylvania law, an order of probation can be changed or revoked if, at any time before he has begun service of his probation the defendant commits offenses or otherwise demonstrates he is unworthy of probation." See Commonwealth v. Mitchell, 955 A.2d 433, 435 (Pa. Super. 2008). Accordingly, the fact that an appellant "had not commenced serving probation when the new offense occurred [does] not prevent the court from revoking its prior order placing [the] appellant on probation." See Commonwealth v. Dickens, 475 A.2d 141, 144 (Pa. Super. 1984) (*citing* Commonwealth v. Wendowski, 420 A.2d 628 (1980)).

3

Appellant claims this Court cannot terminate his parole or revoke his probation based on criminal conduct that occurred *before* his revocation hearing on **November 5, 2010,** during which this Court terminated Appellant's previously-imposed parole, revoked his previously-imposed probation, and re-sentenced Appellant for violating 18 Pa. C.S.A. § 6106. According to Appellant, only conduct that occurred *after* his November 5, 2010 VOP hearing can justify this Court's revocation order at the January 30, 2013 VOP hearing.

The Supreme Court's decision in *Commonwealth v. Infante* addresses a similar sequential scenario and is instructive in this case. On December 10, 1999, the defendant in *Infante* pleaded guilty to possession with intent to deliver a controlled substance ("PWID") and was sentenced to "one year of Intermediate Punishment to be followed by two years of probation[.]" See Infante, 585 Pa. 408, 411-412. On June 5, 2001, the defendant appeared before the trial court for a VOP hearing resulting from a new arrest on charges of simple possession and PWID. Id. The trial court modified the defendant's initial sentence of Intermediate Punishment to include ninety days of house arrest. Id.

On October 29, 2002, the defendant appeared before the trial court for a second VOP hearing, this one resulting from new criminal charges as well as technical violations involving his failure to report or maintain employment. Id. at 412-414. The criminal charges stemmed from the defendant's arrest in July of 2002; trial on these new charges was scheduled for November 26, 2002. Id. "During the [VOP] hearing, neither the parties nor [the defendant's] probation officer explained the nature or extent of the new charges." Id. The trial court revoked the defendant's probation based solely on his **technical** violations, and resentenced him to a county sentence of 11 1/2 to 23 months' imprisonment followed by two years' probation. Id. The trial court explained that it would "await the outcome of [the defendant's] trial on the new

4

charges before determining if a further response was necessary." Id. The court specifically warned that if the defendant was found guilty of the pending criminal charges, the court would terminate his parole, revoke his probation, and "send [him] to state prison." Id. at 414.

The defendant ultimately was found guilty of robbery, intimidating a witness, and possessing an instrument of a crime. Id. at 414-415. He appeared for his third VOP hearing on January 27, 2003, and because of his new convictions, the VOP court terminated the defendant's parole, revoked his probation, and re-sentenced him to three (3) to six (6) years' imprisonment. Id.

On appeal to the Superior Court, the defendant argued that the trial court "erred in finding him to be in violation of probation as a result of criminal behavior that occurred prior to the imposition of such probation." Id.[2] The Superior Court agreed and reversed the trial court's revocation order, holding that it was the "October 2002 imposed probation that was revoked in January 2003" -- not the original probation imposed in December of 1999. **Therefore, the probation imposed in October of 2002 could not be revoked in January of 2003 "based on**

---

[2] In its "slip opinion" to the Superior Court, the trial court held in part:

> In the present case, the January 27, 2003 violation hearing was prompted by a 'subsequent arrest' from when [the defendant] had commenced being under this Court's supervision in December 1999. His criminal conduct (of June 19, 2002, and July 22, 2002) which led to the probation revocation in this case occurred *during* that supervision. [The defendant] had never suffered any consequences for these direct violations and therefore this Court's revocation of his probation and imposition of a new sentence was proper. In this Court's view, so long as [the defendant] has not already had a transgression punished by this Court, the Court is not precluded from punishing him for said transgression (timeliness issues aside).

Id. at 415 (*quoting* trial court's slip opinion).

In his appeals to the Superior Court and Supreme Court, the defendant argued in part that "each parole/probationary term is forever extinguished upon its revocation and is then replaced by the succeeding VOP sentencing order." Id. at 418.

5

criminal conduct that occurred prior to imposition of that [October 2002] probation." Id. at 416 (emphasis added).

The Pennsylvania Supreme Court subsequently granted allocatur **"in order to review the authority of the sentencing judge to terminate parole and revoke probation in the face of a succeeding conviction for criminal conduct, where the underlying conduct, but not the conviction, existed at the time of the prior VOP hearing."** Id. at 417 (emphasis added). In reversing the Superior Court and reinstating the sentence of the trial court, the Supreme Court noted that when "the basis for revocation arises from the advent of intervening criminal conduct, a VOP hearing may be held prior to any trial arising from such criminal conduct." Id. at 421-422. However, a court may postpone a VOP hearing "pending adjudication of criminal charges which are the basis for the revocation." Id. When a court learns that a defendant incurs a criminal conviction for an offense committed while on probation, the court must find a probation violation "as a matter of law." Id. (citations omitted here). According to the Supreme Court, **"the salient point is that the ultimate disposition of outstanding criminal charges, which would require revocation if a conviction occurs, is a proper basis to adjust an existing VOP sentence -- to the defendant's ultimate benefit or to his detriment."** Id. at 425-426 (emphasis added). Therefore, the VOP court "did not lack authority on January 27, 2003 when it considered [the defendant's] November 26, 2002 convictions in terminating his parole, revoking his probation, and imposing the mandatory minimum sentence that the General Assembly has fixed for his crimes." Id.

Similar to *Infante*, the issue in this appeal is whether, on July 30, 2013, this Court could "terminate parole and revoke [Appellant's] probation in the face of a succeeding conviction for criminal conduct, where the underlying conduct ... but not the conviction ... existed at the time of

6

the prior VOP hearing" on November 5, 2010. Quoting Infante, 585 Pa. 408, 417. Although Appellant had not been charged with burglary at the time of his VOP hearing on November 5, 2010 (in contrast to the circumstances in *Infante*), Appellant committed the criminal conduct while serving parole on this Court's original sentence imposed on October 7, 2008 (similar to *Infante*). Like the VOP court in *Infante*, this Court never addressed Appellant's criminal conduct at the prior VOP hearing (on November 5, 2010), when it sentenced Appellant only for his technical violations. Therefore, in accord with *Infante*, Appellant's criminal conduct as a parolee that occurred before his VOP hearing on November 5, 2010 -- for which he later was convicted -- was "a proper basis to adjust [his] existing VOP sentence" on July 30, 2013. See Infante, 585 Pa. 408, 425-426.[3]

Accordingly, consistent with the Supreme Court's reasoning in *Infante*, this Court properly considered Appellant's guilty plea when terminating his parole and revoking his probation, and Appellant's appeal on this ground should be denied. See Infante, 585 Pa. 408, 425-426.[4]

---

[3] Even if the Commonwealth had charged Appellant with burglary by the time of his VOP hearing on November 5, 2010, this Court would have been under no obligation to address Appellant's potential parole/probation violations at *that* time, and could have waited until the disposition of Appellant's new criminal case. See Infante, *supra*; Commonwealth v. Burrell, 497 Pa. 367, 371 (Pa. 1982) ("[I]t is not unreasonable for a probation revocation hearing to be postponed pending adjudication of criminal charges which are the basis for the revocation, even if that postponement results ... in a revocation hearing held after the expiration of the probationary sentence. ... "Although it is constitutionally permissible for a probation revocation hearing to be held after arrest but before determination of a criminal charge ... it has been recognized that it may in many cases be preferable to defer that hearing until after the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing").

[4] This case is distinguishable from cases where a VOP court impermissibly revokes a defendant's probation for criminal conduct occurring before the court imposed *any* sentence of probation. See e.g., Commonwealth v. Carver, 923 A.2d 495 (Pa. Super. 2007) (holding that a court may

7

b.    Whether Appellant "was denied due process of law when parole and probation violation proceedings were not initiated until over two years after the alleged violation was known to the Commonwealth and where [A]ppellant suffered prejudice as a result of that delay."

"When the alleged probation violation is the commission of another crime during the probationary period, the relevant period is the delay between the date of conviction for such crime and the date of the revocation hearing." See Commonwealth v. Smith, 403 A.2d 1326, 1327-1328 (Pa. Super. 1979) (citations omitted here); Commonwealth v. Reed, 419 A.2d 677, 680 (Pa. Super. 1980). "In evaluating the reasonableness of such period, [courts] use a tripartite test, focusing upon three factors: the length of the delay; the reasons for the delay; and the prejudice to the defendant resulting from the delay." See Smith, 403 A.2d 1326, 1328. "[I]t is not unreasonable for a probation revocation hearing to be postponed pending adjudication of criminal charges which are the basis for the revocation, even if that postponement results ... in a revocation hearing held after the expiration of the probationary sentence." See Commonwealth v. Burrell, 497 Pa. 367, 371 (Pa. 1982). "Although it is constitutionally permissible for a probation revocation hearing to be held after arrest but before determination of a criminal charge ... it has been recognized that it may in many cases be preferable to defer that hearing until after

---

not consider "facts occurring prior to the imposition of probation when revoking probation"). Unlike the defendant in *Carver*, Appellant committed his criminal conduct *after* this Court already sentenced him to probation as part of his original sentence, and *while* he was serving parole on that sentence. In fact, because he absconded in November of 2009 and was arrested on burglary and murder charges in July of 2011, Appellant never reached the probation stage of either his original sentence or his re-sentence in November of 2010. Accordingly, in terminating Appellant's parole and revoking his probation, this Court considered conduct that occurred while Appellant already was serving parole on this Court's original sentence imposed on October 7, 2008. This Court did *not* consider conduct that occurred before this Court ever sentenced Appellant to parole and probation. Therefore, the circumstances of this case resemble those presented in *Infante*.

8

the trial, thus avoiding the possibly unjust result of revoking probation, only to find later that the probationer has been acquitted of the charges that prompted the revocation hearing." Id. Furthermore, "a probationer awaiting his probation violation hearing while being imprisoned for another offense does not suffer much if there is a delay in holding the revocation hearing, for he is already imprisoned." See Commonwealth v. Diaz, 392 A.2d 827, 829 (Pa. Super. 1978); Commonwealth v. Clark, 847 A.2d 122, 125 (Pa. Super. 2004).

In this case, the relevant period of "delay" comprises the time between Appellant's guilty plea on the burglary charge and his revocation hearing. See Smith, *supra*. Appellant pleaded guilty on July 18, 2013, and his revocation hearing was held merely two weeks later, on July 30, 2013. Thus, there was no unreasonable delay in the twelve (12) days between Appellant's conviction and his revocation hearing. Moreover, Appellant argues that he suffered "prejudice" because his revocation proceedings were not initiated until over two years after his arrest on the burglary charge. However, Appellant was incarcerated during this interim period *because* of his burglary and murder charges, and thus any purported delay in conducting his revocation hearing had caused him minimal, if any, prejudice, since he would have been confined in any event. See Diaz, *supra*. Because there was no unreasonable delay in conducting Appellant's revocation hearing, and because Appellant suffered no prejudice by whatever delay he claims to have occurred, his appeal on this ground should be denied.

9

## CONCLUSION

For the reasons set forth in the foregoing Opinion, Appellant's convictions of robbery and attempted theft.

BY THE COURT:

DATE: 4/9/14

SUSAN I. SCHULMAN, J.

10