J-A21037-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| WARREN ALSTON, | |
| Appellant | No. 1733 EDA 2014 |

Appeal from the Judgment of Sentence entered May 9, 2014,
in the Court of Common Pleas of Philadelphia County,
Criminal Division, at No(s): CP-51-CR-1205041-2001

BEFORE:  ALLEN, MUNDY, and FITZGERALD*, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED JULY 17, 2015**

Warren Alston ("Appellant") appeals from the judgment of sentence imposed by the trial court after it determined that Appellant had violated his probation.  We affirm.

The trial court summarized the procedural background of this case as follows:

> On April 15, 2002, [Appellant] appeared before [the trial] court and entered into a negotiated guilty plea to one count of unlawful restraint and one count of criminal trespass. Thereafter, the negotiated sentence of time served (11.5 months) to 23 months confinement, followed by 3 years consecutive reporting probation was imposed.  On April 24, 2002, [Appellant] was paroled from Philadelphia County to authorities from New Jersey on an arrest warrant and transported to Middlesex County Correctional Institution to serve a New Jersey sentence for failing to pay imposed violation of probation fines.  [Appellant] was subsequently released to the streets of New Jersey approximately six to eight weeks later. [FN1  [Appellant] remained free from physical incarceration for approximately two months, since on or about July 2002.]  On

*Former Justice specially assigned to the Superior Court.

September 22, 2002, [Appellant] was arrested in Middlesex County, New Jersey and charged with several violent offenses. [FN2 [Appellant] was charged with two counts of burglary, one count of terroristic threats, one count of possession with a deadly weapon unlawful purpose, two counts of aggravated sexual assault, one count of aggravated assault, one count of robbery, and one count of criminal restraint.] Subsequently, on February 9, 2004, [Appellant] pled guilty as charged to all counts, and on May 14, 2004 was sentenced to 20 years confinement, parole ineligible for 17 years and given credit for time served. This court, unaware of [Appellant's] New Jersey conviction, scheduled a listing for July 17, 2002. When [Appellant] failed to appear or inform the court of his whereabouts, a bench warrant was issued for his arrest on July 24, 2002.

On May 9, 2014, a probation revocation hearing was held via two-way simultaneous audio and video media with [Appellant] from the East Jersey State Prison in Rahway, New Jersey. This court found [Appellant] in violation of the probationary sentence imposed on April 15, 2002, and sentenced him to 2.5-5 years state confinement on the charge of unlawful restraint and a consecutive 3.5-7 years on the charge of criminal trespass, both to run consecutive to the term [Appellant] is currently serving in New Jersey, with credit for time served.

[Appellant] filed a Notice of Appeal, on June 9, 2014. On June 10, 2014, this court ordered [Appellant] to file a Statement of Matters Complained of on Appeal in accordance with PA.R.APP.PROC. 1925(b). On June 30, 2014, said statement was filed by [Appellant] along with a Motion for an Extension of Time to File a Supplemental Statement of Errors Complained of on Appeal pending receipt of the notes of testimony. The extension was granted on July 21, 2014 and the supplemental statement was filed on July 22, 2014.

Trial Court Opinion, 11/17/14, at 1-2.

On appeal, Appellant presents two issues for our review:

1. Did not the trial court violate the mandate of Pa.R.Crim.P. 708, that a probation revocation hearing be held "as speedily as possible," inasmuch as [A]ppellant's revocation hearing was not listed or held until 10 years after [A]ppellant's direct violation

guilty plea in New Jersey, and this substantial delay was unreasonable and prejudicial to [A]ppellant?

2. Was not the probation revocation sentence of six to twelve years incarceration to be served at the conclusion of a sentence of twenty years incarceration that [A]ppellant was already serving in New Jersey excessive and unreasonable, where the sentence far surpassed what was necessary to foster [A]ppellant's rehabilitative needs insomuch as the sentence was imposed 10 years after the direct violation occurred and [A]ppellant had already served the length of the entire revocation sentence since he had been incarcerated for 12 years in New Jersey?

Appellant's Brief at 4.

Appellant asserts that his sentence is "excessive … unreasonable and prejudicial," and complains that he is "essentially serving a life sentence." Appellant's Brief at 16-17.

The Commonwealth counters that it is not chargeable with the delay in Appellant's sentencing, *i.e.*, knowledge that Appellant left Pennsylvania without approval when he was paroled in 2002, and that Appellant was responsible "for the delay occasioned by his absconding and committing new crimes." Commonwealth Brief at 7. The Commonwealth maintains that Appellant "was in no way prejudiced by the delay," and additionally asserts that Appellant has failed to present a substantial question regarding his sentencing. ***Id***.

We initially note that when we review the results of a probation revocation hearing, we are limited to determining the validity of the proceedings, and the legality of the judgment of sentence imposed. ***Commonwealth v. Heilman***, 876 A.2d 1021, 1026 (Pa. Super. 2005).

Instantly, we have read the notes of testimony from Appellant's May 9, 2014 probation violation hearing, and conclude that the proceedings were valid and the sentence was legal. The assistant district attorney asserted:

> [U]ltimately the reason for the delay falls on [Appellant's] shoulders. He was on the street at some point after July, and he's the one who got arrested in September. [Appellant's counsel] seems to be implying … that somehow because the new arrest – I think [Appellant's counsel] is asking this Court to make a connection between the fact that [Appellant] was released by the Philadelphia prison to Middlesex County and then was arrested in Middlesex County, that somehow the Philadelphia prison system is responsible for keeping track of him. What if he had been arrested in New York or Vermont or Arizona?
>
> He got arrested in September. I don't see how under normal circumstances the Philadelphia Probation Department is necessarily supposed to be made aware of that.

N.T., 5/9/14, at 30.

In agreement, the trial court reasoned:

> This case is extremely troubling to me. [Appellant] negotiated a plea most favorable to him under circumstances which play out in a more violent fashion across the river in New Jersey. If we remember, [Appellant] pled guilty to unlawful restraint and criminal trespass in the Philadelphia case, and the facts were that he unlawfully entered the home of his estranged wife, and despite her pleadings he held her hostage for a period of time until he was arrested.
>
> He is essentially asking this court to give him the benefit of having been arrested obviously on a warrant from New Jersey, and when he got back to New Jersey, despite the fact that he left the jurisdiction without any approval, while he was free he did not return to Philadelphia. Instead he remained in New Jersey, committed a crime, a vicious crime, was sent to jail, and now he maintains that while he was in jail he had done everything in his power to bring his location to the attention of the Philadelphia authorities. I reject that uncorroborated statement or statements of his out of hand.

- 4 -

He then goes on to say that because of the long period of delay for which he is at fault that the citizens of the Commonwealth of Pennsylvania should be blamed because his having not been brought before this court to have the detainer resolved has worked a prejudice against him, and I am to believe – he has asked me to believe that this prejudices a man who entered someone else's home and sexually assaulted them, the prejudice that precludes his being given a favorable classification is not the heinousness of the crime I just outlined, but the fact that he has a detainer back here in Philadelphia. I find that there is no prejudice.

*Id*. at 52-53.

Consistent with the foregoing, the Honorable Sandy L.V. Byrd, sitting as the trial court, has authored a thorough and comprehensive opinion further explaining the propriety of Appellant's sentence given the specific factual background and applicable legal authority. Accordingly, we adopt Judge Byrd's November 17, 2014 opinion as our own in affirming Appellant's judgment of sentence.

Judgment of sentence affirmed.

Justice Fitzgerald joins the Memorandum.

Judge Mundy concurs in the result.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2015

- 5 -

**IN THE COURT OF COMMON PLEAS PHILADELPHIA COUNTY
CRIMINAL TRIAL DIVISION**

COMMONWEALTH OF PENNSYLVANIA   :    CP-51-CR-1205041-2001

                            :

          v.              :    SUPERIOR COURT

                            :

WARREN ALSTON           :

                            :

                            :    1733 EDA 2014

**FILED**

NOV 17 2014

Criminal Appeals Unit
First Judicial District of PA

**OPINION**

**Byrd, J.**                                      **November 17, 2014**

Defendant, Warren Alston, filed a direct appeal from this court's May 9, 2014 judgment of

sentence following a violation of probation hearing. In accordance with the requirements of PA.

R.APP. PROC. 1925, this court submits the following Opinion.

## I. PROCEDURAL HISTORY

On April 15, 2002 defendant appeared before this court and entered into a negotiated guilty plea

to one count of unlawful restraint and one count of criminal trespass. Thereafter, the negotiated

sentence of time served (11.5 months) to 23 months confinement, followed by 3 years consecutive

reporting probation was imposed. On April 24, 2002, defendant was paroled from Philadelphia

County to authorities from New Jersey on an arrest warrant and transported to Middlesex County

Correctional Institution to serve a New Jersey sentence for failing to pay imposed violation of

probation fines. Defendant was subsequently released to the streets of New Jersey approximately six

to eight weeks later.[1] On September 22, 2002, defendant was arrested in Middlesex County, New Jersey and charged with several violent offenses.[2] Subsequently, on February 9, 2004, defendant pled guilty as charged to all counts, and on May 14, 2004 was sentenced to 20 years confinement, parole ineligible for 17 years and given credit for time served. This court, unaware of defendant's New Jersey conviction, scheduled a listing for July, 17, 2002. When defendant failed to appear or inform the court of his whereabouts, a bench warrant was issued for his arrest on July 24, 2002.

On May 9, 2014, a probation revocation hearing was held via two-way simultaneous audio and video media with defendant from the East Jersey State Prison in Rahway, New Jersey. This court found defendant in violation of the probationary sentence imposed on April 15, 2002, and sentenced him to 2.5 -5 years state confinement on the charge of unlawful restraint and a consecutive to 3.5 -7 years on the charge of criminal trespass, both to run consecutive to the term defendant is currently serving in New Jersey, with credit given for time served.

Defendant filed a Notice of Appeal, on June 9, 2014. On June 10, 2014, this court ordered defendant to file a Statement of Matters Complained of on Appeal in accordance with PA. R.APP. PROC. 1925 (b). On June 30, 2014, said statement was filed by defendant along with a Motion for an Extension of Time to File a Supplemental Statement of Errors Complained of on Appeal pending receipt of the notes of testimony. The extension was granted on July 21, 2014 and the supplemental statement was filed on July 22, 2014.

## II. STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

In accordance with PA. R.APP. PROC.1925 (b), defendant raised the following issues in his

---

[1] Defendant remained free from physical incarceration for approximately two months, since on or about July 2002.
[2] Defendant was charged with two counts of burglary (N.J. STAT. ANN. § 2C:18-2 (a)(1)), one count of terroristic threats (§ 2C:12-3(b)), one count of possession of a weapon unlawful purpose (§ 2C:39-4(d)), two counts of aggravated sexual assault (§ 2C:14-2(a)(3)), one count of aggravated assault (§ 2C: 13-2(a)), one count of robbery

2

*Commonwealth v. Warren Alston*

Statement of Matters Complained of on Appeal[3]:

  a. Appellant's right to due process of law and his right to a speedy hearing under Pa. R. Crim. P. 708 (B) were violated by the ten (10) year delay between his new conviction and his probation violation hearing, said delay being not intrinsically reasonable. Furthermore, the Commonwealth failed to exercise due diligence in scheduling the revocation hearing and appellant was prejudiced by the delay by being denied access to a modified custody status and various programs in prison, which unnecessarily restrained his personal liberty.

  b. The sentence imposed on the charge of unlawful restraint, 18 Pa. C.S.A. § 2902, is illegal because the original term of incarceration of time-served to twenty [sic] (23) months combined with the new term of incarceration of two-and-one-half (2 1/2) to five (5) years results in an aggregate period of imprisonment that exceeds the statutory maximum.

  c. The sentence imposed on appellant violated the requirements of 42 Pa. C.S.A. § 9721 (b), in that it was unreasonable, manifestly excessive, and far surpassed what was necessary to foster appellant's rehabilitative needs.

## III. FACTUAL BACKGROUND

At the violation of probation hearing, this court first proffered an email from Philadelphia Adult Parole and Probation Department Supervisor Duane Archie and defendant's Gagnon II hearing summary. The Commonwealth presented the testimony of Probation Officer Rosa Ramos and defendant testified on his own behalf. The facts supporting revocation of probation are as follows.

On April 24, 2002 after being sentenced by this court on April 15, 2002, pursuant to a negotiated guilty plea, defendant was released to Middlesex County, New Jersey sheriff's department on an open probation detainer. *N.T.* 5/9/2014 at 19, 20-21. Unaware of defendant's release and his incarceration in Middlesex County, this court scheduled a hearing for July 17, 2002. *Id.* at 20. Subsequently, a bench warrant was issued on July 24, 2002, after defendant failed to appear. The hearing revealed that defendant had not been assigned a probation officer between his April 24, 2002 parole release date and issuance of the warrant on July 24, 2002. *Id.* at 21-22. However, after the

---

(§ 2C:15-1(a)(1)), and one count of criminal restraint (§ 2C:13-2(a)).

*Commonwealth v. Warren Alston*

bench warrant was issued, defendant's file was transferred out of the probation unit to the violation unit. *Id.* at 24.

On April 7, 2014 Mr. Archie brought to this court's attention that defendant had been convicted out of state and was serving a 20 year incarceration sentence in East Jersey State Prison. *Id.* at 11-12. Mr. Archie stated that on July 24, 2013 the APPD was notified of defendant's New Jersey convictions, which placed him in direct violation of this court's April 15, 2002 sentence. *Id.* at 11-12, 16. His probationary term was scheduled to expire on October 17, 2006, however at that time defendant was incarcerated in New Jersey following a September 22, 2002 arrest. *Id.* at 11-12, 15. The APPD had not scheduled a hearing due to the outstanding active bench warrant issued on July 24, 2002. On April 7, 2014 Mr. Archie emailed this court and requested that a hearing be scheduled. *Id.* at 14, 16. The following day, April 8, 2014, a hearing was scheduled for April 11, 2014. *Id.* at 16. The hearing, however, was continued to May 9, 2014 pending the availability of necessary two-way simultaneous audio and video media. *Id.*

At the hearing, defense counsel emphasized defendant's duty to inform the Commonwealth of his release from Philadelphia prison to Middlesex County Correctional Institution and of his subsequent release from New Jersey custody in July 2002. *Id.* at 29. Defendant, however, made no such verifiable attempt during his two months of freedom, or after he was arrested in New Jersey on the felony charges. *Id.* at 29-30, 34, 42. During the revocation hearing it was also revealed that between July 2002 and July 2013, defendant made no attempts to inform this court directly of his incarceration status in New Jersey. *N.T.* 5/9/2014 at 27, 42. Defendant however alleged that on one occasion between 2008 and 2010, he made an effort to notify Pennsylvania authorities of his New Jersey incarceration through an interstate detainer. *Id.* at 35. Defendant further claimed that he filed

---

[3] The previous statement was taken verbatim from defendant's filed Statement of Errors.

4

*Commonwealth v. Warren Alston*

the pleadings with the Philadelphia Clerk of Courts and the District Attorney's office, and received confirmation. *Id.* at 25-26. However, he failed to present any correspondence or documentation of same at the revocation hearing. *Id.* Thus defendant's allegation was based on facts not proven by the evidence presented. *Id.* In 2002, defendant was apparently also serving a probationary sentence under the supervision of the Court of Common Pleas, Northampton County, Pennsylvania. By defendant's account, that court did not conduct a revocation hearing after his New Jersey convictions, but terminated his case. *Id.*

Furthermore, the Gagnon II hearing revealed that defendant will not be eligible for parole from the East Jersey State Prison in Rahway, NJ until 2019, at the age of 63, following which he will remain under New Jersey supervision for the remainder of his life. *Id.* at 25. Defendant's sole contention for having this court terminate its probationary sentence was that the detainer was prejudicial because it prevented modification and reduction of his medium/maximum security custody status and precluded him from being eligible for certain jobs and programs while incarcerated. *Id.* at 27, 37. Despite the self- identified "very serious charges," for which defendant was imprisoned, he insisted that it was his detainer that prejudiced his custody status and program accessibility. *Id.* at 43-45. This court explicitly rejected defendant's "uncorroborated claim," and denied his motion to terminate probation. *Id.* at 53.

## IV. DISCUSSION

### A. Defendant's Due Process and Speedy Trial Claim Lacks Merit

Defendant first asserts that his "right to due process of law and his right to a speedy hearing under PA. R.CRIM. PROC. 708 (B) were violated by the ten (10) year delay between his new conviction and his probation violation hearing." Statement of Errors ¶ a.

The Pennsylvania Constitution affords due process rights, which include the right to "a

5

*Commonwealth v. Warren Alston*

speedy public trial by an impartial jury of the vicinage . . . in all criminal prosecutions." PA. CONST. ART. I, § 9. Pertaining to violation of probation and parole hearings, Pennsylvania law establishes that a trial "judge [can]not revoke [] probation . . . or parole . . .unless there has been: a hearing held *as speedily as possible* at which the defendant is present and represented by counsel [and there is] a finding of record that the defendant violated a condition of probation. . . or parole. PA. R. CRIM. PRO. 708 (B)(1)(emphasis added). The Superior Court has interpreted the rule to require that a revocation hearing be held within a *reasonable time. Commonwealth v. Saunders*, 575 A.2d 936, 938 (Pa. Super. 1990)(emphasis added). When a revocation hearing is delayed, the court must evaluate the reasonableness of the delay by examining three factors: (1) the length of the delay; (2) the reasons for the delay; and (3) the prejudice resulting to the defendant. *Id.* Applying the factors here, the delay, although lengthy was reasonable under circumstances of this specific case and defendant suffered no prejudice.

Under the first prong of the reasonableness test, *the length of the delay*, "[t]he relevant period of delay is calculated from the date of conviction or entry of guilty plea to the date of the violation hearing." *Commonwealth v. Woods*, 965 A.2d 1225, 1227 (Pa. Super. 2009) (citation omitted). Here, the length of the delay was from February 9, 2004, the date defendant pled guilty as charged in New Jersey, to May 9, 2014, the date of defendant's probation violation hearing. However, Philadelphia authorities did not become aware of defendant's conviction until July 24, 2013. After this court was informed of defendant's New Jersey conviction on April 7, 2014, a hearing was scheduled the following day. However, the hearing was not held until May 9, 2014, in order to obtain the necessary two-way simultaneous audio and video media. Thus, the ten (10) year delay is directly attributable to defendant's unavailability. Defendant, while on probation in 2002, was incarcerated in another jurisdiction, such that his presence could not be discovered despite the Commonwealth's due

6

*Commonwealth v. Warren Alston*

diligence. Therefore, defendant is not entitled to relief.

Moreover, as for the second prong of the reasonableness test, *the reasons for the delay*, the delay was caused by defendant's conduct. In *Commonwealth v. Short*, although defendant's revocation hearing was initially timely scheduled, there was a 29-month delay between its original and actual date. *Commonwealth v. Short*, No. CP-01-CR-0000745-2003, 2007 WL 5004096, (Adams Cnty. Ct. C.P. Mar. 13, 2007). After defendant did not appear for his original hearing, the trial court issued a warrant for his arrest. *Id.* Unknown to the trial court, defendant had been convicted and sentenced to 2.5 years' incarceration in another county and there was no evidence that the Commonwealth or the court had any knowledge of his whereabouts. *Id.* Within a month of being made aware of defendant's whereabouts, a hearing was scheduled. *Id.* Noting that the record presented no indication that defendant was made available prior to the hearing date, the court denied defendant relief, and held that because "[q]uick action was taken, and a hearing was completed within a month, the delay was caused by defendant's failure to appear, his unknown whereabouts, and his criminal conduct which resulted in a state sentence." *Id.*

Similarly, this court issued a bench warrant for defendant's arrest after he failed to appear for his July 17, 2002 hearing. Unknown to this court and the Commonwealth, defendant was free in Middlesex County, New Jersey until his September 22, 2002 arrests which was followed by a sentence of 20 years' incarceration in New Jersey. However, after being notified on July 24, 2013 that defendant was serving a 20 year incarceration sentence at East Jersey State Prison, a hearing was scheduled. Thus, the Commonwealth's actions constitutes due diligence in light of defendant's New Jersey incarceration and his failure to maintain contact with the APPD. Even so, the most compelling evidence is, however, defendant's own complete acceptance of responsibility for the delay. At the revocation hearing defendant stated "I also take full responsibility for any lapse there may have been

7

*Commonwealth v. Warren Alston*

between the time I was released and contacted the authorities. In essence I would just like to say that I take full responsibility for my actions." *N.T.* 5/9/2014 at 57-58. The foregoing notwithstanding, defendant asserts that the "Commonwealth failed to exercise due diligence in scheduling the revocation hearing. . ." Defendant's claim lacks merit.

Finally, under the third prong of the reasonableness test, *the prejudice resulting to defendant*, "[t]he question is whether . . . the appellant was prejudiced by the delay." *Woods*, 965 A.2d at 1227. "Prejudice in this context compromises the loss of essential witnesses or evidence, the absence of which would obfuscate the determination of whether probation was violated, or unnecessary restraint of personal liberty." *Woods*, 965 A.2d at 1227-28 (citing *Commonwealth v. Clark*, 847 A.2d 122, 124 (Pa.Super.2004)). As set forth above the delay was reasonable under the circumstances of this specific case. Defendant contends that he "was prejudiced by the delay by being denied access to a modified custody status and various programs in prison, which unnecessarily restrained his personal liberty." This court however fully rejects this uncorroborated assertion.

As this court eluded to at defendant's revocation hearing, it is more likely that the nature of defendant's crimes determined his custody status, and limited access to the various programs in prison, rather than a remote decade old Pennsylvania detainer. Here, there was no loss of essential witnesses or evidence, the determination of whether probation was violated was clearly based on a subsequent conviction, and any unnecessary restraint of personal liberty was due only to the fault of defendant. Therefore, this court correctly rejected defendant's contention that the delay prejudiced him by denying him access to various prison programs. This court properly concluded that the delay was reasonable under the circumstances of this case and that defendant suffered no prejudice.

Furthermore, defendant's argument that his "right to due process of law and his right to a speedy hearing . . . were violated by the ten (10) year delay [which] [was] not intrinsically

8

*Commonwealth v. Warren Alston*

reasonable" is unfounded. The U.S. Supreme Court has set forth the due process rights of a defendant in a parole revocation hearing. *Commonwealth v. Honeyblue*, 276 Pa. Super. 107, 113 (1980). The Court has held that the "due process rights of a defendant in a probation revocation hearing are less than those afforded a defendant in a criminal trial." *Id.* at 113. Specifically, the Supreme Court has identified those due process rights as encompassing:

> (a) written notice of the claimed violations of (probation or) parole ; (b) disclosure to (probationer or) parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body . . . and (f) a written statement by the factfinder[] as to the evidence relied on and reasons for revoking (probation or) parole.

*Commonwealth v. Ruff*, 272 Pa. Super. 50, 57 (1979). Significantly, the Supreme Court has noted that even instances where a revocation hearing is delayed "until after the parolee has completed the sentence for the conviction which constituted the parole violation does not offend the principles of due process." *Commonwealth v. Waters*, 252 Pa. Super. 357, 359-60 (1977) (quoting *Moody v. Daggett*, 429 U.S. 78, 97 (1976)). Clearly, where a probation revocation hearing is delayed as a direct result of defendant's conduct and where he has not been prejudiced by said delay, there is no deprivation of due process rights.

## B. Defendant's Illegal Sentence Claim Lacks Merit

Next, defendant claims that "the sentence imposed on the charge of unlawful restraint, 18 PA. CONS. STAT. ANN. § 2902, is illegal because the original term of incarceration of time-served to twenty (23) months combined with the new term of incarceration of two-and-one-half (2.5) to five (5) years results in an aggregate period of imprisonment that exceeds the statutory maximum." This claim must fail.

"The [standard of] review in an appeal from [a] judgment of sentence which has been

9

*Commonwealth v. Warren Alston*

imposed following revocation of probation is limited to the validity of the revocation proceedings and the legality of the final judgment of sentence. *Commonwealth v. Sylvanus*, 369 A.2d 826, 828 (Pa. Super. 1976) (citing *Commonwealth v. Gilmore*, 348 A.2d 425, 427 (Pa. 1975)). Therefore, "it is well settled that the revocation of a probation sentence is a matter committed to the sound discretion of the trial court and that court's decision will not be disturbed on appeal in the absence of an error of law or an abuse of discretion." *Id.* at 322 (citing *Commonwealth v. Smith*, 669 A.2d 1008, 1011 (Pa. Super. 1996); *Commonwealth v. Sierra*, 752 A.2d 910, 913 (Pa. Super. 2000)). The Superior Court's examination is thus "limited to determining the validity . . . and the authority of the sentencing court to consider the same sentencing alternatives that it had at the time of the initial sentencing." *Commonwealth v. Hoover*, 909 A.2d 321, 322-23 (Pa. Super. 2006).

In *Commonwealth v. Williams*, defendant was originally sentenced to 11.5 to 23 months imprisonment and a consecutive 3 year probation term, after pleading guilty to attempted theft by unlawful taking, a felony of the third degree, with a statutory maximum of 3.5 -7 years. 662 A.2d 658, 658 (Pa. Super. 1995). After serving the minimum sentence, defendant was released on parole. *Id.* Sometime later, however, defendant's parole was revoked as a result of a conviction for new crimes, so he served the remainder of the 23 months under the original sentence and his probation was continued. *Id.* After being convicted while on parole a second time, defendant's probation was revoked and he was then sentenced to 3.5 -7 years' imprisonment, the statutory maximum sentence allowed for his original attempted theft by unlawful taking plea of guilty. *Id.* at 658-659. There, the trial court however only credited defendant with time served while on the violation of probation detainer and not with the cumulative 23 months already served imprisoned on the original offense. *Id.* at 659. On appeal, the Superior Court found validity in the basis of defendant's claim which was

10

*Commonwealth v. Warren Alston*

"the [trial court's] failure to credit [him] with the 23 months already served." *Williams*, 662 A.2d at 659.

Unlike the court in *Williams* which erred in failing to credit defendant with the time served on his original sentence, here, Mr. Alston's period of time served was credited against the 2.5-5 years' term imposed at the Gagnon II sentencing hearing. *N.T.* 5/9/2014 at 60. Thus, defendant was "given credit for time served" after being sentenced to 2.5-5 years state confinement on the charge of unlawful restraint.

### C. Defendant's Manifestly Excessive Sentence Claim Lacks Merit

Finally, defendant alleges that "[t]he sentence imposed . . . violated the requirements of 42 PA. CONS. STAT. ANN. §9721(b), in that it was unreasonable, manifestly excessive, and far surpassed what was necessary to foster [his] rehabilitative needs." This claim is also meritless. It is first important to note that title 42, section 9721(b) of the Pennsylvania Consolidated Statutes Annotated specifically refers to the imposition of a sentence based on the Pennsylvania Commission on Sentencing. It is however well settled that in Pennsylvania "the sentencing guidelines do not apply to sentences imposed as a result of [a]. . . revocation of probation hearing." 204 PA. CODE § 303.1.

Moreover, in *Commonwealth v. Coolbaugh*, defendant claimed that his violation of probation sentence was excessive because it was inconsistent with the sentencing code, and that the court either deviated from the guidelines without providing adequate reasons, or considered improper factors. 770 A.2d 788, 792 (Pa. Super. Ct. 2001) (quoting 204 PA. CODE § 303.1(b)). However, the Superior Court found defendant's claim without merit after noting that "[t]he sentencing guidelines do not apply to sentences imposed as a result of probation or parole revocations. . . " *Id.*; *See also Commonwealth v. Cappellini*, 690 A.2d 1220 (Pa. 1997). Where defendant "challeng[es] the discretionary aspects of sentencing, [the Superior Court] must determine whether he has raised a

11

*Commonwealth v. Warren Alston*

substantial question as to whether his sentence was appropriate under the Sentencing Code as a whole." See: 42 PA. CONS. STAT. ANN. § 9781(b). In *Kraft* the Court however emphasized that "it is well established that a claim of excessiveness of sentence does not raise a substantial question so as to permit appellate review where the sentence is within the statutory limits." 737 A.2d 755, 757 (Pa. Super. Ct. 1999) (quoting *Commonwealth v. Cruz-Centeno*, 668 A.2d 536, 545 (Pa. Super. 1995)). Thus, for reasons similar to those stated above, where the sentence imposed is within the statutory allowable minimum and maximum range, defendant has failed to raise a substantial question that would permit appellate review.

It must not be overlooked that the purpose of a probation violation hearing remains to assess "whether the conduct of the probationer indicates that probation has proven to be an effective vehicle to accomplish rehabilitation and a sufficient deterrent against future antisocial conduct." *Kates*, 305 A.2d at 708. *See also Commonwealth v. Mullins*, 918 A.2d 82, 86 (2007) (noting that "[e]ven where the VOP hearing record is insufficient to sustain revocation of probation, this purpose should not be frustrated"). For that reason, the court must "balance the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison." *Del Conte*, 419 A.2d at 783.

In balancing the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating defendant outside of prison, this court took into account defendant's original crime and the seriousness of the crimes for which he was convicted, placing him in direct violation of this court's probationary sentence. *N.T.* 5/9/2014 at 59. In the original case, on November 13, 2001, defendant unlawfully entered the home of his estranged wife, and despite her pleadings, held her hostage until he was apprehended. *Id.* at 52. The record evidences that this court properly found that for this defendant, probation was an ineffective vehicle to accomplish

12

*Commonwealth v. Warren Alston*

rehabilitation and an insufficient deterrent against future antisocial conduct. Thus, society's need for protection outweighed defendant's need for rehabilitation. *Id.* at 60.

## V. CONCLUSION

For the aforementioned reasons, this court's judgment of sentence should be AFFIRMED.

BY THE COURT

November 17, 2014

SANDY L.V. BYRD, J.

13

*Commonwealth v. Warren Alston*